Good morning, Your Honor. This is the Court of Appeals. Quinn Dender, Federal Defendant in the Second Round. I represent Mr. Hightower. Mr. Hightower is charged with the most insidious acts of violence against a legislator. And at the moment, he can carry a sentence of three, six, or eight years under California law. However, it is alleged that he has suffered two prior convictions of the same sort, one in 1978 and one in 1982. As a result of that, his sentence for being admittedly convicted of a prior or a present offense and a prior to the problem true is 15 years in trial. He has 1982 offenses of a serious felony under California law. It is doubled to 30 years of life. After he had gone to trial, most of what he would have faced would have been 31 years of life. He would have gotten additional years because he had served a prior prison term. Instead, he's allegedly got 30 years of life. We have basically three challenges that I'd like to talk about in the two sessions. One is the question of his competency to even enter a plea of the kind. The second is, is the advisory employee going to tolerate about the priors in this proceeding? Before he admitted these priors that occurred in this proceeding, was he adequately advised that he had a way with the rights? And the third question is as opposed to actually to whether his attorney in the state court proceeding here in 1994, 1995, was ineffective in failing to mount a challenge to the 1978 conviction. If he had mounted that, we believe he would have shown that it could not have been used to enhance his sentence. And Mr. Hightower would be looking at a maximum of 16 years of which he would be able to get parole at 50% rather than, I think it would have to be really 16 years. I don't want to take you out of your order, but your third issue, isn't that foreclosed by Lackawanna? Your Honor, I don't believe it is. And, in fact, Lackawanna says that we cannot, as we did with one of our claims, ask on the aegis to have a prior conviction declared invalid. But it does have a foreclosure, I believe, out of raising a certain claim about how this was handled. There's a procedure in California where you are charged with a prior conviction. No matter how old that conviction is, whether you're in custody on it or not. Yeah, but how do you show prejudice? How do you show prejudice? I'm not sure at which point. The prejudice is, it would be that they can't use that against him if it was found to be invalid. There's a motion to strike priors. But you can't under costs. Your Honor, I don't believe that's correct. I think the difference is that we're not asking the court to find this court to make a determination of whether that is a prior. We're not bringing up a Boyd v. Hall challenge to that. What we're asking you to do is look at state counsel's performance in 1994 and 1995 in failing to use an existing state remedy to strike that prior. And the California law was, and still is, no matter when, even if you cannot challenge that prior in a habeas corpus in its own right, it's a state of use it to enhance it. Yes. But in order to do that, you have to be able to show that there was something wrong with that decision that he should have challenged, which is the prejudice, as I understand it. And I don't know how do you do that. Well, I think I could have. I've given you the data. So we're just around, we're the same place that we were before. Isn't that an end run around Lackawanna? Well, I don't think it's an end run. And maybe you're going to resolve that question. But Lackawanna really is a very specific matter. I mean, Lackawanna said that if you exhausted your state remedy or failed to use it, then you can't come to the federal court, right, and ask the federal court to strike. This gentleman never had an opportunity to use that state remedy that was available to him. He had a remedy in state court. So he didn't have a remedy to file a habeas corpus challenging his 1978. But he did have, as soon as the state said, we want to use the 78 to enhance your sentence, then under a case called Kimball v. Summerston, he had a right to move to strike the prior. So it can say you can't forget about that validity. It cannot be used to enhance a sentence. And that's what counsel didn't do. Counsel didn't do what any counsel would do, which is say, if you're going to enhance a sentence to this great degree, then what I need to do is I need to get the records out. Well, suppose there was no reason to do it. Are you asking for a, for some kind of rule that if the prior conviction wasn't challenged, that therefore it can never be used? That's a very odd rule. Well, I can't use it in this particular case. You know, I'm, I have a claim to charge for the misdemeanors now. Yeah. There are two prior convictions that they have alleged against him. They don't have to allege him. But they decided to allege him in order to trigger this 15 to 1. Right. Then don't I have a duty, and I have a right under state law, to move to strike those priors on Roy Pintole and Brown. In this proceeding, if I file a severed agency, which I can't do because I'm no longer in custody of him, but if they want to use it under state law, then I can file it. I think it's my duty as a criminal to get the records on those to see if they can be challenged under Roy Pintole. Because if they can be challenged, then, then my trial court will strike them and say, well, it can't be used in this case. Okay. I, I do think that. Did you submit those cases to the court? I don't think there was a question here. No, there isn't a question on those. They're not. No, you're, they're not under race. Have you submitted them opposing counsel? I mean, the two California cases you just cited, there was. No, I haven't. You should. And would you get. Yes. But this goes to the California procedures. Yeah. But this, this, to answer your question, do you want to know, is there a California procedure? Yeah. Right, right, right. Right. I realize we haven't filled that gap. Yeah. Yeah. So, so our, our point is, if, if, if counsel's in this job, he would have gone over and got these records from Atlantic County, he would have seen that the records I was sending you by motion and judicial notice. He would have said, this, I want to move to strike this fire because it doesn't mean weighing tall grounds. The judge would have said, correct. And then Mr., the most they would have had was one prior conviction against Mr. Hontaro, which would have meant that he would have 16 years sentence maximum, instead of 30 to life. He asked you a slightly different question. Did you actually raise that issue in the broking brief? Yes. In effective assistance case? Absolutely. Maybe you can let me know where it is. Not, you don't have to act on, on rebuttal. Don't, don't waste your time now. Okay. Yeah. Okay. But just. It's, it's raised. It isn't real easy because I didn't see it. But that means I could have missed it. But anyway. Okay. Okay. And he's raised it all along to the effect of assistance and challenges. Right. But, so that's, and, and our, not on the point now, I'm, I'm, I'm weighing tall is, and we actually take judicial notice of those records. Now, those records were not before the district court. I'll, I'll, I'll concede that. They did not, they did not rule on that. The reason was Mr. Hontaro did not have counsel. He booked several times to get the records. He was told they weren't available. I, I was able to send a paralegal up to one county and found them down in the basement of the courthouse. But I think if you look at the records, it's pretty clear that there was a working tall error and counsel, counsel brought that to the state court's attention. They were struggling to move that. The other two issues are, are some of the, one is the question of the trial, or at least the whole evidentiary hearing. Did I report on that? Did you request an evidentiary hearing? Yes, you did. It shows in the records. Yeah, even though you're not a person by counsel, if you got an evidentiary hearing, you would have gotten it. But you don't need to get counsel appointed by the district court to look at that. I, I think the key, the key thing about, about this may be the fact that he was taking Florazine because I, I, I think Florazine, I, I, I'm, I'm looking into what Florazine does, and it's, it's quite an amazing drug. It's a, it's a psychotropic monoclonal antidepressant drug. And one of, one of the key things, and he was taking substantial amount. He was taking 15 milligrams to the point of 100 milligrams a night at the time of his plea. That was later reduced to 300 milligrams at the time of his arrest, at the time of his, right after his plea. But the, the important thing about this drug is that it has the unusual property of inducing the state of relative, relative indifference to stressful situations. Well, you know, he may have been on a bazillion drugs, and apparently was, but that doesn't necessarily indicate that he was unable to appreciate what was going on. He represented himself for a time. He asked questions of the court when he didn't get what was being asked of him. And he manifested, had no manifestations of confusion or mental instability or whatever that would have clued the trial judge at the time to pursue a, a hearing. Well, can we take it one more minute? He represents himself for approximately a month. He didn't die. Well, I know, but the point is that he didn't manifest anything that would have given anybody a clue, including his lawyer, including the judge. And he didn't say that he was not a person of interest to the trial judge.  He didn't say that he couldn't assist in his defense. His lawyer had been told by his wife about her concerns and did nothing about it. He'd gotten his records. He would have seen the authority and there is something. At one point, he admitted something. They asked him, do you understand that this comes from under Section 707? And he said yes. And the judge asked him, do you know what that means? And he said no. He also admitted two priors. He admitted that these were forcible oral copulations. They weren't. They weren't charged that way. He admitted prior to the crime. Well, it doesn't mean they weren't. It just means they weren't charged that way. No, I didn't say that. But it was a conviction of forcible oral copulations. It was not. It was oral copulations of different kinds. That's a good thing. When you admit crimes, you can do that. And the other thing, what I'm trying to say about the floor is that it has an unusual side. What it does is it reduces a state of relative indifference in stressful situations. In other words, you don't care. The reason it was developed was for surgical patients because when you gave them this, they became kind of indifferent to the surgery. And Justice Kennedy has talked about it in a concurrent opinion. And has talked about what it can do. And has said that basically, it reduces the defendant's loss of self-determination, undermining his desire for self-preservation, which is necessary to engage the defendant in self-defense. And that makes a lot of sense here. When you have somebody who's pleading guilty for 30 years to life, when the most they could have in the trial would be 31 years to life. It's just a pretty illusory environment. And so I think that that, the floor is, I agree. You can take some medication, but this happens to be a very unusual medication because it almost disables you from defending yourself. That's the nature of it. That's the purpose of it. He was taking a lot of it. You end up being an illusory plea for pardon. At that time, he admitted crime. He had a prior evidence that he didn't have. He said he understood things he didn't understand. I think it's fair enough to get a hearing. That's the kind of the policy question. Now, the second question of the appointment trial has to do with priors. This is a situation where the court did a perfectly proper job of advising as to those are the rights when it came to priors to express waivers. What exactly did you contend that that court ought to have asked with respect to the priors? I'm not clear on what you wanted it to ask. Well, I think that what it should have asked is what you probably kind of almost every other one would have said. Now we're going to go to the prior information. Do you understand that you have the right to a jury trial? Do you want to give up that right? Do you have a right to tranquillity? Do you want to give up that right? Do you have a right to civil? And you know, and your quarrel is that he did that by shorthand by saying, you know, everything I've just asked you applies to the priors, too. I mean, is that the real what this comes down to, or is there something different? No, no, no. There really was two problems. One is that he took the admission of the priors without saying anything at all. He took the plea and said not even the priors. And then the counsel said, well, what about the constitutional rights? The judge seemed surprised. What constitutional rights? And then they did this kind of bumbling thing where they said, do you give up whatever rights you have? Yes, so it's constitutional error not to have done, to have done, to have flipped the order? And what's the constitutional error it's been trying to get? Well, under the Salem, you're supposed to be advised of and aware of your rights prior to the plea, not afterwards. This Court said you can't take a plea and then afterwards advise the person of the rights and say, well, that's sufficient. They say they have the rights and they understand them. Well, he didn't. He didn't give them the opportunity to withdraw the plea or admission before he did. So that's the problem with that. Are you suggesting that with respect to each prior it has to be done separately or that it can be done with respect to all the priors? I think it could have been both priors. You could very say that each of these priors you have these rights. And that's what's generally done. That is not a form, a procedure in California that hasn't normally been done because the law is very clear to this Court and the California Supreme Court that you have to oversee what you tolerate and the law is aligned. Is there any case that says it has to be done? In what sense? As to priors. Yes, there is. We cited another. There's one of your cases in Henry Yerko's, the California case, and there's one of your cases that's cited here, Craven v. the son of another father, that says that just as you do for a plea, an admission prior is the exact same as what the father does. And I would like to hear your views on that. Thank you. Thank you, Mr. Chairman. Would you mind commenting on his last remark about Wright v. Craven, that a separate and full recitation of constitutional rights is required with respect to the priors? Mr. Chairman, do you believe that it has to be allowed to be a plea and a prior with respect to constitutional rights? No, there is no formalized step that they have to do in terms of – they have to know when to volunteer. They have to know when they're admitted. They have to know – there's a certain standard of morality you have to indicate that. In this case, the record clearly indicates that the standard of morality of avoiding All right. Thank you. In terms of the black and white issue on the 1978 trial, would it be – the record submitted by Mr. Nichol, we're not referencing it in this report, but even assuming this court is going to take a look at it and then, you know, provide some solution to this matter, I think that the record clearly indicates that the defendant was informed of what the court asked of him. And in this case, the record clearly, as I mentioned, does not indicate that the defendant was advised of the constitutional right of the defendant to state his and their stance. Under the presumption of regularity that's in the top of the law in the trial court history, what the defendant might be saying – and the state court might be saying that there was no indication that the defendant – that there was any evidence that the defendant was not advised of the constitutional right of his or her stance. I think that that decision – I did so. I don't – I don't see what – what could that mean. The court also informed the defendant of his possible plea, his possible pensions, and that's a thing I understand. I think the – the defendant ordered – it was clear that he was advised of the law rights and that he understood that anyway. He – in the – this is a 1978 proceeding and a 1982 proceeding. He was advised of the law rights again. But there was no concern. He didn't raise any issues. He didn't raise any issues until now because now he's hoping to get out from this 7.5 statute and leave us with a 6.5 statute. So now he's alleging that he does not know what was happening in 1978 and 1982. So I think this – the fact is that this is basically – it is a way to get around I see that at this point in time. But I'm not bringing up the 19 – the 1992 – the attorney did not challenge the 1978 part. But the whole thing with Lackawanna is the problem was trying – trying to bring in old court records, 18-year-old court records indicating transgender men, indicating exactly what occurred in the 1978 proceedings. We haven't been afforded to be able to enter into the forms of constitutional rights that I understood. I don't see that there's any problem in terms of the police being able to find these new gentlemen. But isn't he claiming that the one exception in Lackawanna was where there's a violation of the Sixth Amendment right to counsel, that basically he didn't have counsel. He had – well, he had counsel, but he had ineffective counsel. Well, yes, Your Honor. But the fact is that Lackawanna is still – is still a bootstrapping of the whole doctrine of an IEC claim to bring in – to attack our convention. It's just eviscerates Lackawanna and puts Lackawanna to death for the defendants who are doing that. And I understand the fact that they're saying that it was not counsel, but he was represented by counsel in that 1978 proceeding. He was represented by counsel all along. Yet, you know, the counsel at the part of the proceeding actually said it didn't matter. Are there any further questions? Thank you, counsel. Mr. Denver. I just want to go back to the Lackawanna case, because I think that it is a strong case, but it doesn't deal with the situation we have here. In Lackawanna, the defendant was unable to see Amy's corpus because it was no longer covered under that particular sentence that was made to use to enhance it. California happens to have a procedure that says, you know, you may not be able to bring in the defendant's corpus suit just to set that aside in general, but you are allowed to when the state wants to use it against you to challenge this motion to strike your prior. And I don't think Lackawanna just doesn't deal with that. The California procedure, California practitioners are supposed to be aware of it. California practitioners look at priors all the time to see if they are valid or not. I think it is an issue in Lackawanna. Thank you. Thank you very much. The case just argued is submitted for decision. We'll hear the next case on the calendar, United States v. McCoy and Davis. Thank you.
judges: Schroeder, Dw Nelson, Rymer